**AM/COMM SYSTEMS, INC., D.O.T. Communications, Inc. and Ohmura Corporation**

**v.**

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY; Western Electric Company, Inc.; and Bell Telephone Laboratories, Inc.**

**NATIONWIDE INTRUSION DETECTION, INC.**

**v.**

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY; Western Electric Company, Inc.; and Bell Telephone Laboratories, Inc.**

**GLOBAL TELECOMMUNICATIONS CORP.**

**v.**

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY; Western Electric Company, Inc.; and Bell Telephone Laboratories, Inc.**

**Nos. 83–4122, 83–5364 and 83–5468.**

United States District Court, E.D. Pennsylvania.

Feb. 17, 1984.

Leonard Barrack, Samuel R. Simon (argued), Philadelphia, Pa., for Am/Comm Systems, Inc., D.O.T. Communications, Inc. and Ohmura Corp.

Bernard M. Gross, Warren Rubin, Jay Sacks Cohen, Philadelphia, Pa., for Nationwide Intrusion Detection, Inc.

Arnold Levin, Philadelphia, Pa., Lewis H. Markowitz, York, Pa., for Global Telecommunications Corp.

George L. Saunders Jr. (argued), Chicago, Ill., David H. Pittinsky, Lawrence D. Berger, Carl H. Hittinger, Philadelphia, Pa., for American Tel. and Tel. Co., Western Elec. Co., Inc. and Bell Telephone Laboratories, Inc.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure and defendants' motion to strike the class action allegations from the complaint. For the reasons stated herein, the motion for class certification will be denied and the motion to strike the class action allegations will be granted.

### I. FACTS

A brief history of the circumstances leading to this case is needed for a better understanding of the dispute.[1] Prior to 1968, tariffs filed by defendants [2] with the

---

1. This brief factual background is taken from plaintiffs' complaint and is for the sole purpose of having a better understanding of the dispute presently before the court. It does not constitute findings of fact or law by the court.

2. Defendants are American Telephone and Telegraph Co. ("AT & T"), Western Electric Co., Inc. ("Western Electric") and Bell Telephone Laboratories, Inc. ("Bell Labs").

Federal Communication Commission ("FCC") and with state and local regulatory bodies prohibited telephone customers from installing any telephone terminal equipment[3] not supplied by defendants. In 1968 the FCC ruled that these tariffs prohibiting customer-provided terminal equipment were unlawful. Defendants then filed tariffs known as "interface tariffs" which permitted connection of customer-provided terminal equipment with defendants' telephone network but only on the condition that the telephone customer lease a Protective Connecting Arrangement ("PCA") from one of defendants' local operating companies. A PCA was not required if the customer used telephone terminal equipment supplied by defendants. The purported reason for the PCA requirement was to protect defendants' telephone network from damage which would be caused by telephone terminal equipment not supplied by defendants.

Plaintiffs,[4] who are distributors of telephone terminal equipment items which were required to use PCAs under the tariffs, allege that the PCA requirement for all customer-provided telephone terminal equipment was unnecessary and unreasonable. Additionally, plaintiffs contend that the PCA requirement suppressed competition in the telephone terminal equipment market because of the unavailability, inadequate performance and expensive maintenance of the PCAs. Plaintiffs claim that these traits of the PCAs, forced persons who might have otherwise bought their own terminal equipment to use defendants' terminal equipment which, under the tariffs, did not require the use of PCAs. As a result of this decreased interest in tele-

phone terminal equipment which required the use of PCAs, plaintiffs, as distributors of such equipment, allegedly lost sales and profits.

Plaintiffs filed their complaint on August 23, 1983. They allege that defendants have violated sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, by: (1) engaging in an unlawful combination and conspiracy to unreasonably restrain trade and commerce in the manufacture, distribution, sale, rental and lease of telephone terminal equipment; and (2) having combined and conspired to monopolize the manufacture, distribution, sale, rental and lease of the aforementioned equipment.

Plaintiffs presently seek, pursuant to Rule 23 of the Federal Rules of Civil Procedure, certification of the following class:

> All United States distributors of telephone terminal equipment who during the period 1968 through 1983 purchased such equipment for resale from manufacturers other than Western Electric.

## II. DISCUSSION

In order for an action to be maintained as a class action, the four requirements of Rule 23(a) and the requirements of one of the subsections of Rule 23(b) must be met. Plaintiffs allege they have met all of the requirements of Rule 23(a) and Rule 23(b)(3).

*Rule 23(a)*

 Rule 23(a)(1) requires that the members of the class be so numerous that joinder of each individual member of the class would be impracticable. In this action there are approximately one thousand alleged members of the class. The court

---

**3.** Plaintiffs have defined "telephone terminal equipment" or "terminal equipment" to include all mechanical and/or electronic equipment located on customer's premises at terminal points of telecommunications networks including, but not limited to, burglar alarms, computer related equipment utilizing telephone line transmissions, telephones, automatic dialers, tone dialers, and automatic answering devices (equipment which automatically answers, records and/or transfers incoming telephone calls and which is interconnected to telephone lines including, but not limited to, automatic answering

machines, call divertors and call sequencers). (Complaint ¶ 4).

**4.** Plaintiffs are three California corporations, Am/Comm Systems, Inc. ("Am/Comm"), D.O.T. Communications Inc. ("D.O.T."), and Ohmura Corporation ("Ohmura"); a Pennsylvania corporation, Nationwide Intrusion Detection, Inc. ("Nationwide"); and a Delaware corporation, Global Telecommunications Corporation ("Global").

notes that defendants admit, as they must, that this numerousity requirement is met. The court finds that joinder of each of these plaintiffs individually would be impracticable. *See Pabon v. McIntosh,* 546 F.Supp. 1328 (E.D.Pa.1982); *Sharp v. Coopers and Lybrand,* 70 F.R.D. 544 (E.D.Pa. 1976).

 Rule 23(a)(2) requires that there be questions of law or fact common to the class. The court finds that, at a minimum, there are many questions of fact common to the members of the proposed class. Included among these factual questions would be the purpose behind and history of the existence and implementation of the various tariffs filed by defendants.

 Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims of the class members. This requirement is met if the representatives' claims arise from the same event or course of conduct that gives rise to the claims of the class members and are based on the same legal theory. *Paskel v. Heckler,* 99 F.R.D. 80, 84 (E.D.Pa.1983) (citation omitted). Additionally, although the representatives' claims need not be identical to those of the class, the claims must be similar enough to permit the court to conclude that the representatives will adequately represent the interests of the class. *Hedges Enterprises, Inc. v. Continental Group,* 81 F.R.D. 461, 465 (E.D.Pa.1979).

 In this case all the claims arise from the same conduct, namely, defendants' filing of tariffs which required the use of PCAs for any telephone terminal equipment not supplied by defendants. Additionally, all the claims are based on the theory that defendants' conduct violated sections 1 and 2 of the Sherman Act. However, since at least some of the members of the proposed class distributed items of equipment not distributed by the representatives, the claims of the representatives are not similar enough to those of all the class members so that it can be said with certainty that all of the class members' claims will be adequately represented by presentation of the representatives' claims. Proof by the representative plaintiffs that the PCA requirement was in violation of the antitrust laws with respect to the items of equipment they distributed will not prove the unlawfulness of the PCA requirement with respect to other items of equipment which they did not distribute but which were distributed by some members of the proposed class.

Plaintiffs' suggestion that it is enough to prove in the abstract that the PCA requirement was in violation of the antitrust laws is erroneous. There must be a determination on a product-by-product basis as to whether the PCA requirement violated the antitrust laws. Therefore, although the representatives' claims arise out of the same conduct and are based on the same legal theory as the proposed members' claims, the representatives' claims are not typical of the proposed members' claims since proof of the representatives' claims would not necessarily prove all the members' claims.

 Rule 23(a)(4) requires that the representative parties adequately protect the interests of the class. Adequate representation depends upon two factors: (1) the attorneys of the class representatives must be qualified, experienced and generally able to conduct the proposed litigation; and (2) the representative parties must not have interests antagonistic to those of the class. *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Regarding the qualification aspect, defendants concede and the court finds that the attorneys for the class representatives are capable of conducting the litigation.

 The second aspect of Rule 23(a)(4)'s adequacy requirement is a much more difficult issue to resolve. The standard to be used in determining whether the representative parties' interests are antagonistic to those of the class is whether there is likely to be a divergence in viewpoint or goals in the conduct of the suit. *Bogosian v. Gulf Oil Co.,* 561 F.2d 434, 449

(3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). In antitrust cases such as the instant one, where plaintiffs allege competitive foreclosure of a limited market, not only is it likely that there will be a divergence in viewpoint or goals, but there must necessarily be a divergence due to the manner in which damages are calculated. In these cases, where defendants' activity has allegedly foreclosed plaintiffs from a share of the market that plaintiffs would have acquired in absence of such activity, plaintiffs' damages are measured by lost profits or sales. Thus, each party injured by defendants' activity, whether the party be a class representative or a class member, must prove the percentage of the market it would have had but for defendants' illegal activity. Proof of any percentage by the representative plaintiffs will necessarily diminish the percentage recoverable by the members of the class. Because of this antagonistic interest between the class representatives and the members of the class in their attempts to show that they were damaged by defendants' activity, this court determines that, in limited market foreclosure cases such as this case, adequate representation of the interests of the class members by class representatives is impossible. *See Franklin Container Corp. v. International Paper Co.,* No. 77–3204 (E.D.Pa. May 12, 1982); *Chestnut Fleet Rentals, Inc. v. Hertz Corp.,* 72 F.R.D. 541 (E.D.Pa.1976); *Hub Tire Co. v. B.F. Goodrich,* No. 75–85 (E.D.Pa. Nov. 15, 1976); *Al Barnett & Son, Inc. v. Outboard Marine Corp.,* 64 F.R.D. 43 (D.Del.1974).

In support of their contention that their interests are not antagonistic to those of the proposed class, plaintiffs allege that their goal is to prove that defendants' unlawful conduct impeded their ability to make sales and profits and that this is also the goal of the members of the proposed class. While it is true that all plaintiffs would have to show that their sales were impeded, that alone would not permit them to recover damages, and therefore that alone is not the goal sought. Recovery is possible only when the individual parties prove that they, instead of someone else, would have had a certain percentage of the market but for defendants' illegal activity. It is this latter requirement which causes the antagonistic interest between the representative plaintiffs and members of the proposed class and the corresponding failure to meet all of the requirements of Rule 23(a)(4).

*Rule 23(b)(3)*

Rule 23(b)(3) permits an action to proceed as a class action if: (1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The court finds that neither of these requirements is met.

(A) *Predominance of Common Questions*

■ Before the court can decide the issue of predominance, it must first identify the issues involved in the lawsuit. *See Bogosian,* 561 F.2d at 448. Plaintiffs' characterization of the case suggests that the only legal issue to be decided is whether the PCA requirement was in violation of the antitrust laws. This would be accurate if: (1) the representatives and all class members distributed only one type of telephone terminal equipment; and (2) under the tariffs, a PCA was required to be used with that equipment. However, since the representatives and all of the proposed class members do not distribute all the same type of telephone terminal equipment and since there must be a determination on a product-by-product basis as to the legality of the PCA requirement, there must necessarily be many individual issues which would need to be resolved and which are not common to the class. If class certification was granted there would have to be proof for each distributor in the class that the PCA requirement was unlawful in relation to the equipment distributed by that distributor.

Additionally, as the Third Circuit Court of Appeals recognized in *Bogosian,* proof of damages in lost profits cases "necessarily would focus" on the operation of each affected class member's business. 561 F.2d at 445. Such an analysis of each member's business would bring about a plethora of questions affecting only individual members.

Accordingly, this action should not proceed as a class action since questions affecting only individual members would predominate over those common to members of the class.

### (B) *Superiority*

 Although Rule 23(b)(3) sets forth a number of factors to be considered in determining whether a class action is a superior method for adjudication of a controversy, a cursory review of the circumstances of this case reveals that a class action is not a superior method for adjudication of this controversy. (1) The members of the proposed class would presumably want to litigate on their own due to the conflicting interests among the members regarding damages. (2) There is a need for a determination of the reasonableness of the PCA requirement on a product-by-product basis. (3) It is alleged that a number of individual related cases have already been filed against defendants, a factor which weighs against class certification. *Bogus v. American Speech & Hearing Assn.,* 582 F.2d 277, 278, n. 17 (3d Cir.1978) (citing Comments of Advisory Committee on Civil Rules, 39 F.R.D. 69, 104). And finally, (4) this case could become entirely unmanageable due to individualized proofs of violation and impact. Accordingly, a class action in this case would not be a superior method of adjudication.

## III. CONCLUSION

Since plaintiffs have failed to meet all the necessary requirements for class certification, their motion for class certification will be denied and defendants' motion to strike the class action allegations from the complaint will be granted.

An appropriate Order will be entered.