**Bernadine A. RISHCOFF**

v.

**COMMODITY FLUCTUATIONS SYSTEMS, INC., D.E. Jones Commodities, Inc. and Karen F. Genovese.**

Civ. A. No. 85–4597.

United States District Court, E.D. Pennsylvania.

July 14, 1986.

Eugene A. Specter, Arthur L. Pressman, Philadelphia, Pa., Richard J. Orloski, Allentown, Pa., for plaintiff.

Earl H. Nemser, H. Peter Haveles, New York City, Howard H. Lewis, Timothy I. McCann, Philadelphia, Pa., for D.E. Jones Commodities, Inc.

Karen Genovese, Mamaroneck, N.Y., pro se.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Plaintiff Bernardine Rishcoff seeks certification of a class of investors who purchased defendant Commodity Fluctuations Systems, Inc.'s, "Extended Futures Account" and suffered a loss thereby between February 10, 1982, and November 17, 1983. Rishcoff requests class certification pursuant to Fed.R.Civ.P. 23(a) and (b)(3). The named plaintiff and putative class representative alleges violations of various provisions of The Commodity Exchange Act, 7 U.S.C. §§ 6b(A), 6f(1), 6o (1) as well as other federal and state statutes.

Defendant Commodity Fluctuations Systems, Inc., (CFS) functioned as commodity trading advisor (CTA) throughout the class period, with defendant Karen Genovese as its president and majority shareholder. Defendant D.E. Jones Commodities, Inc., (Jones) was the futures commission merchant (FCM) through which CFS purchased its commodity futures contracts. Defendant Jones opposes certification of a class of investors represented by the named plaintiff for three principal reasons: because the named plaintiff's claims are not typical of the putative class; because common questions of law and fact are not predominant; because the claims of most putative class members are barred by the statute of limitations.

Defendant Jones' objections to class certification are based upon (1) subsection (a) and (b)(3) of Rule 23, and (2) the statute of limitations. Before making the findings required by Rule 23 for certifying a class, we will deal with the statute of limitations argument.

▮ Other courts have considered this issue and have held that such a contention cannot serve to bar a class certification in that an inquiry into a claimed affirmative defense impermissably allows an issue going to the merits of the litigation to intrude upon the class certification analysis required by Rule 23. *See, Fickinger v. C.I. Planning Corp.*, 103 F.R.D. 529 (E.D.Pa. 1984), and cases cited therein. It is well settled that the issue of class certification is separate and distinct from questions involving the likelihood of success on the merits of the case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Thus, we, too, conclude that issues relating to whether certain claims may be barred by the statute of limitations are irrelevant to the question of whether a class should be certified and will not be considered in determining the propri-

ety of allowing the case to proceed as a class action.

Before considering whether this case is appropriate for class certification under Rule 23(b)(3), the Court must first determine that all the requirements of subsection (a) of Rule 23 have been satisfied.

The familiar requirements for class certification under Rule 23(a) are as follows: (1) the class is so numerous that joinder of all members is impracticable (numerosity), (2) there are questions of law or fact common to the class (commonality), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality), and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation). Professor Moore has suggested an analytical framework which is helpful in structuring the Court's inquiry into the four general class certification requirements. *See,* 3 *Moore's Federal Practice* ¶ 23.06-2 at 23–191. (2d Ed.1985). He suggests that the four requirements be approached by means of four questions: (1) "Who are the proposed class?", (2) "What are the claims of the class?", (3) "What is the individual claim of the class representative?", (4) "Who is the representative?".

Applying the foregoing structure, we conclude that the numerosity requirement has certainly been met in this case. Supporting documentation provided by the plaintiff and not challenged by the defendant reveals that six hundred fifty (650) accounts were opened on behalf of putative class members during the class period and that approximately ninety-five per cent (95%) of those accounts lost money. (*See,* Exh. 45 to Affidavit in Support of Plaintiff's Reply Memorandum in Support of Her Motion for Class Certification, Doc. # 15). While the class is large enough for the Court to conclude that joinder would be impracticable, it is not so large as to be unmanageable should a class be certified.

Plaintiff, on behalf of the putative class, alleges that defendants engaged in material misrepresentations in violation of the Commodity Exchange Act in order to induce unsophisticated investors to enter into commodity futures trading. Plaintiff further alleges that she and other class members, relying upon defendants' oral and written misrepresentations, invested in commodity futures and subsequently lost all or most of the money invested. Thus, there are common questions of law to be resolved. Specifically, the plaintiff must demonstrate that the Commodity Exchange Act has been violated by defendants' actions. Obviously, if the same information was disseminated by defendants and is found to be in violation of the law, that conclusion will apply to all class members.

Defendant Jones contends that our answer to the next question, "What is the claim of the class representative?", will lead to the conclusion that her claims are not typical of the class. Jones argues that the named plaintiff had a prior relationship with the broker who contacted her and persuaded her to invest with CFS before receiving any written promotional material which other putative class members may have received and upon which they may have relied. According to Jones, this unique circumstance renders the plaintiff's claims atypical.

This case is unusual in that the Court has access to the claims of many of the putative class members through the records of an enforcement proceeding brought by the Commodity Futures Trading Commission (CFTC) in the United States District Court for the Southern District of New York. Copies of complaints received by the CFTC, which presumably prompted the court action, and transcripts of testimony at the hearing reveal that most, if not all, putative class members were solicited to invest by telephone contact from CFS brokers before seeing any written materials prepared or distributed by defendants. While there does not appear to have been any other instance of a prior relationship of trust and confidence between the broker and the customer, it does appear that CFS brokers were unusually successful in soliciting accounts by

telephone. In each instance, the investor agreed to open a CFS account with Jones as a result of telephone conversations with a CFS broker. Moreover, each putative class member, including the named plaintiff, executed an identical account application on D.E. Jones forms and was urged to return it immediately. Many investors, including the named plaintiff, had their applications picked up by Federal Express for overnight delivery at the instigation of the broker who solicited the account. Finally, the telephone calls which ultimately resulted in the opening of accounts were frequent, persistent and aimed toward overcoming initial resistance on the part of potential investors. Under the remarkably similar circumstances which exist here, we conclude that the named plaintiff's prior acquaintance with the broker who solicited her was incidental and does not defeat the typicality requirement.

There is every indication that the named plaintiff will be an adequate class representative. At her deposition, she demonstrated an understanding of her responsibilities as a class representative and a willingness to assume the attendant burdens. Moreover, we can discern no potential for conflict between plaintiff and other members of the class. Thus, we conclude that the requirements of Rule 23(a) have been met in this case.

Next, we consider the requirements for the specific type of class action which plaintiff wishes to pursue. Since she seeks certification under Rule 23(b)(3), the Court must determine that common issues of law and fact predominate over individual issues and that the class action is superior to other methods for fair and efficient adjudication of the case.

Defendant Jones contends that common issues of law and fact cannot be predominant in this case because much of the alleged misrepresentation was by oral rather than written communication. Consequently, each class member's claim is unique since each may have been given somewhat different information upon which he or she relied.

While courts have refused to certify a Rule 23(b)(3) class when the record reveals, "a series of highly individualized presentations by ... brokers to their clients", *Seiler v. E.F. Hutton*, 102 F.R.D. 880, 891 (D.N.J.1984), the record developed in this case reveals a remarkably similar approach to potential investors by many different brokers.

In contrast to the situation which existed in *Seiler* and the factually similar case of *Glick v. E.F. Hutton & Co., Inc.*, 106 F.R.D. 446 (E.D.Pa.1985), it is obvious that the brokers' presentations in this case were "scripted". Indeed, plaintiff has presented written scripts which had been prepared by CFS for its employees. (See, Exh. 8 and 9 to Doc. #15). Even if the script was not read verbatim to each prospective investor, the principal elements of a standardized "pitch" to such prospects remained remarkably consistent. Soliciting brokers stressed that the Extended Futures Account (EFA) that they were promoting involved only one lifetime fee which would be more economical over the long run than smaller fees per trade. They also touted the EFA as the one approach to commodities trading that consistently yielded a profit for investors, that it was virtually a "can't lose" proposition. Further, brokers consistently represented that they were experienced in identifying undervalued commodities which would rise in value over the long term and that the EFA would allow investors to withstand temporary price reversals and remain in the chosen commodity long enough to reap the benefits of its inevitable rise. Finally, investors were consistently urged to act quickly to take advantage of an existing low price before the commodity began its inevitable rise. These consistent elements of the brokers' solicitations, coupled with the large number of persons who invested on the basis of telephone contact by brokers with whom they had no prior relationship and the relatively large number of different brokers involved, suggests that CFS had developed a successful marketing strategy that was applied to all potential customers.

The record in this case reveals enough of a "common nucleus" of facts in the brokers' approaches to potential investors to make it appropriate for class treatment. (*See,* 3B *Moore's Federal Practice* ¶ 23.46 (2nd Ed.1985). To the extent that identifiable variations in the standard approach are revealed as the case progresses such variations may be handled by subclasses. *Id.*

█ Finally, we conclude that the fair and efficient adjudication of the plaintiff's claims, as well as those of the other CFS investors, will be served best by the requested class certification. The class action in this instance is superior to other methods of adjudication. This case involves a large number of claims, but each is likely to involve a relatively small amount of money. Moreover, the prior CFTC proceeding in the Southern District of New York has already developed a record through which identification and notification of many class members may be expedited. It is the existence of that record and the information therein contained which compels this Court to favorably consider the application for class certification. Should it develop that said record is grossly inaccurate, incorrect or incomplete or should it develop that collateral issues, such as the statute of limitations, render continued class action litigation impracticable, burdensome and inefficient, this Court will consider decertification as a necessary and viable alternative to protracted, burdensome and continued class action litigation. Plaintiff's motion for class certification will be granted.