### CONNECTICUT COOLING TOTAL AIR, INC. *v.* CONNECTICUT NATURAL GAS CORPORATION*

Superior Court          File No. CV980147174S
Complex Litigation Docket at Waterbury

Memorandum filed February 8, 1999

* An appeal to the Appellate Court by the defendant was filed on March 31, 1999; Appellate Court Docket No. AC 19451. On August 4, 1999, the appeal was withdrawn.

*Halloran & Sage,* for the plaintiff.

*Murtha, Cullina, Richter & Pinney,* for the defendant.

I

## INTRODUCTION

HODGSON, J. The plaintiff in the above-captioned action has moved for certification of a class pursuant to Practice Book §§ 9-7 and 9-8 and General Statutes § 42-110g (b) of the Connecticut Unfair Trade Practices Act (CUTPA). The plaintiff, Connecticut Cooling Total Air, Inc., proposes certification of a class described as follows: "All those persons who, during the period from November 8, 1992 to the present have held contractor licenses issued by the State of Connecticut which permit them to perform either 'plumbing and piping work' as defined in Conn. Gen. Stat. § 20-330 (3) and/or 'heating, piping and cooling work' as defined in Conn. Gen. Stat. § 20-330 (5) or companies who have utilized persons holding such licenses to perform such work and which have, during the time period indicated, regularly done or scheduled business in the geographic area served by the defendant, namely, in the towns of Avon, Berlin, Bloomfield, East Hartford, Farmington, Glastonbury, Greenwich, Hartford, Hebron, Manchester, Mansfield, Marlborough, New Britain, Newington, Portland, Rocky Hill, Simsbury, South Windsor, Vernon, West Hartford, Wethersfield and Windsor."

The claims that the plaintiff seeks to pursue as a class action are set forth in its revised complaint filed on July 7, 1998. That complaint is brought in three counts. In the first two counts, the plaintiff alleges that

the defendant, Connecticut Natural Gas Corporation, engaged in unfair trade practices in violation of CUTPA by assigning unlicensed workers to perform plumbing, heating and piping work which state law requires to be performed only by licensed workers. The plaintiff alleges that such conduct constituted unfair competition which caused it to suffer a loss of business and lost revenues and profits.

In the third count, the plaintiff alleges that the defendant tortiously interfered with its existing contractual relationships and prospective business relationships by using unlicensed workers to perform plumbing, piping, heating and cooling work for present and prospective customers of the plaintiff.

The plaintiff seeks compensatory damages and declaratory and injunctive relief.

## II

### STANDARD FOR CLASS CERTIFICATION

In combination, Practice Book §§ 9-7 and 9-8 provide eight requirements for class certification: (1) That the class is so numerous that joinder of all members is impractical; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) that the representative parties will fairly and adequately protect the interests of the class; (5) that common questions of law or fact predominate over any questions affecting only individual members; (6) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy; (7) that a class exists; and (8) that the class representative is a member of the class.

The movant has not asserted that § 42-110g (b) supplies any different standard.

This court finds that class certification is inappropriate in the present case for two reasons: (1) the interests of the proposed class representative are antagonistic to the interests of potential class members that it seeks to represent; and (2) as to the claim of tortious interference with business relations and expectations, the issues that apply to individual potential class members predominate over the issues common to all.

For these two reasons, this court concludes that a class action is not superior to individual suits by potential members of the class.

## III

## THE PLAINTIFF'S CLAIM OF THE DEFENDANT'S VIOLATION OF CUTPA

The theory of the plaintiff's CUTPA claim is that the defendant competed unfairly by performing certain services with the unfair advantage of using unlicensed service workers while the plaintiff had to employ only licensed workers to do the same kinds of jobs. The plaintiff will seek to establish that but for this alleged unfair advantage, some portion of the work performed by the defendant would have been performed by the plaintiff, presumably on the basis of evidence of market share or of loss of specific jobs to the defendant.

The proposed members of the class, as persons or businesses performing the same services as the plaintiff, would similarly assert that but for the alleged unfair competition from the defendant they would have been hired to perform the heating, plumbing and piping jobs performed by the defendant. Merely to define the claims of the proposed class representative and the proposed class members is to illuminate a problem: they compete for the same business against one another as well as against the defendant, and each such business has an

interest in claiming that it would have secured the contracts secured by the defendant, not only instead of the defendant, but also instead of other heating, piping and plumbing contractors, including other members of the proposed class. The plaintiff thus proposes to represent a group of parties with antagonistic interests. If, for example, liability were established and damages were awarded on the basis of market share, the plaintiff and the proposed class members would be in conflict over the percentage of the market each would have had but for the violation. One class member might take the position that it would have had all or more of the business that fell to the defendant and that other class members would not have been equipped to perform the work at issue. Counsel for the proposed class would have an ethical conflict in attempting to serve the interests of parties whose interests would be to secure greater compensation from the same contested work than other members of the class.

The Connecticut Supreme Court has ruled that the Connecticut rules for class certification are substantially similar to rule 23 of the Federal Rules of Civil Procedure and that federal case law construing that rule may be used as an aid to their construction. See *Board of Trustees* v. *Freedom of Information Commission*, 181 Conn. 544, 553, 436 A.2d 266 (1980); *Success Village Apartments, Inc.* v. *Local 376*, 175 Conn. 165, 168, 397 A.2d 85 (1978). The plaintiff bears the burden of establishing that each requirement of the Practice Book rules is met. *Arduini* v. *Automobile Ins. Co. of Hartford, Connecticut*, 23 Conn. App. 585, 589, 583 A.2d 152 (1990).

Rule 23 (a) (4) of the Federal Rules of Civil Procedure requires a finding that "the representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties

and the class they seek to represent." *Amchem Products, Inc.* v. *Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). To determine whether the representative parties' interests are antagonistic to those of the class, the court must consider "whether there is likely to be a divergence in viewpoint or goals in the conduct of the suit." *Am/Comm Systems* v. *American Telephone & Telegraph Co.*, 101 F.R.D. 317, 321 (1984); *Bogosian* v. *Gulf Oil Co.*, 561 F.2d 434, 449 (3d Cir. 1977), cert. denied, 434 U.S. 1086, 98 S. Ct. 1280, 55 L. Ed. 2d 791 (1978); see *Hansberry* v. *Lee*, 311 U.S. 32, 45, 61 S. Ct. 115, 85 L. Ed. 22 (1940); *Broussard* v. *Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 337–38 (4th Cir. 1998). Intraclass conflicts that preclude class certification include situations such as the one presently before the court, in which there may be a divergence in interests relating to the manner in which damages would be calculated based upon market share of the particular class member of the plaintiff. *Am/Comm Systems* v. *American Telephone & Telegraph Co.*, supra, 321–22.

In many cases in which multiple parties claim injury, the claim of each claimant is separate from and unrelated to amounts claimed by each other claimant; for example, when multiple employees claim unpaid wages or multiple consumers claim separate injuries. In such instances, each class member claims separate damages, arising from his own injury, and no plaintiff claims the same asset claimed by another plaintiff.

In the case before this court, the claim is that the defendant unfairly obtained business that would otherwise have gone to others. Obviously, the pie is finite. The defendant performed a particular number of heating, piping and plumbing jobs in the time period at issue. The claim is that at least part of this work would have gone to other contractors. Potential class members have an interest in vying for the biggest possible

slice of that disputed pie, claiming that they, rather than their competitors, would have gotten a large share of the work that went to the defendant. The number of claimants does not increase the size of the item in dispute, that is, the amount of work done by the defendant allegedly on the basis of unfair competition. Were class certification permitted in the present case, the plaintiff and each member of the class would not merely be competitors in the market but also competitors in the courtroom. The existence of potential for such an intraclass conflict leads to the conclusion that a class action is not a superior method of adjudicating the claims at issue.

IV

THE PLAINTIFF'S CLAIM OF TORTIOUS INTERFER-
ENCE WITH BUSINESS RELATIONS AND
EXPECTATIONS BY THE DEFENDANT

The plaintiff's claim of tortious interference with existing prospective business relations by the defendant is specific to the particular business relationships of the plaintiff and its specific prospects; for example, its bidding on particular projects that may ultimately have been won by the defendant. Proof of these claims requires evidence of the existence of relationships. See *Robert S. Weiss & Associates, Inc.* v. *Wiederlight,* 208 Conn. 525, 535–36, 546 A.2d 216 (1988); *Solomon* v. *Aberman,* 196 Conn. 359, 364, 493 A.2d 193 (1985). It would be necessary, therefore, for each class member to establish its existing and prospective business relationships in order to establish tortious interference. The proposed class members obviously did not all have the same existing business relationships, and they would potentially have competing claims to prospective relationships. The individual issues of proof of liability would, in the judgment of this court, predominate over the common issues concerning the conduct of the

defendant. See *Al Barnett & Son, Inc.* v. *Outboard Marine Corp.*, 64 F.R.D. 43, 50–51 (1974).

V

## CLASS CERTIFICATION VERSUS ADJUDICATION OF SEPARATE CLAIMS

As has been explained above, this court does not find that the requirements for class certification are met. Even if this determination were deemed incorrect, this court additionally does not find that the class action form is superior to all other available methods for the fair and efficient adjudication of the controversy. For the reasons set forth in part I of this opinion, individual members of the class have an interest in controlling the prosecution of their own claims. Several members of the proposed class have already brought their own actions, and those actions are also assigned to the complex litigation docket. *Connecticut Cooling Total Air, Inc.* v. *Southern Connecticut Gas Co.*, Superior Court, judicial district of Waterbury, Docket No. CV98148787; *Connecticut Cooling Total Air, Inc.* v. *Yankee Gas Services*, Superior Court, judicial district of Waterbury, Docket No. CV98149075; *Connecticut Cooling Total Air, Inc.* v. *Connecticut Natural Gas*, Superior Court, judicial district of Waterbury, Docket No. CV98149076; *Connecticut Heating & Cooling, Inc.* v. *Connecticut Natural Gas*, Superior Court, judicial district of Waterbury, Docket No. CV95149083. The court has devised a case management strategy involving trial of a "bellwether" case from among these cases, as a potential means of achieving a more prompt trial of issues that may lead to negotiated resolutions of all the cases.

For these reasons, this court does not find a class action to be superior to the adjudication of separate claims by the entities claimed to be members of the proposed class.

## VI

## CONCLUSION

The motion for class certification is denied.