**WESTERN STATES WHOLESALE, INC.**

v.

**SYNTHETIC INDUSTRIES, INC. et al.**

**No. CV 00–346RT (MANx).**

United States District Court,
C.D. California.

Feb. 19, 2002.

Lee A. Freeman, Lee A. Freeman & Associates, Woodland Hills, CA, for plaintiffs.

Richard DeNatale, Heller Ehrman White & McAuliffe, San Francisco, CA, Michael T. Williams, Jilana L. Miller, Heller Ehrman White & McAuliffe, Los Angeles, CA, for defendants.

PROCEEDINGS: ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

TIMLIN, District Judge.

The court, the Honorable Robert J. Timlin, has read and considered Plaintiff Western States Wholesale, Inc. ("Western States")'s motion for class certification, Defendant SI Corporation ("SI")'s opposition[1], Western States's reply, SI's supplemental brief, and Western States's supplemental brief[2] Based

1. Along with its opposition, SI requested judicial notice of a complaint filed in the Superior Court of the State of California for the County of Los Angeles, *Hicks, et al. v. Kaufman and Broad Home Corp. et al.*, BC 198414 (filed May 27, 1999); an order in that case denying class certification and dismissing class claims; and an order granting SI's motion for summary adjudication in *Acosta v. Kaufman and Broad Home Corp. et al.*, SC046582. The court denies the request for judicial notice because these pleadings and orders are not relevant to Western States's motion for class certification.

2. SI requested oral argument on this motion. The court denied the request, but permitted the parties to submit supplemental briefs addressing "which statute of limitations the court is to apply to Western States' claim on behalf of itself and a class of welded wire mesh manufacturers and how the applicable statute of limitations affects whether Western States has met the requirements for class certification." Order Denying

on such consideration, the court concludes as follows:

## I.

### BACKGROUND

Western States is a California corporation with its principal place of business in Ontario, California. Western States manufactures and distributes welded wire mesh,[3] which is used as secondary reinforcement of concrete building slabs. Welded wire mesh consists of 10 gauge wire arranged in six inch squares. When poured concrete dries, it shrinks and can crack. Wire mesh placed within the concrete slab enables holding the cracks together and prevents pieces of concrete from being displaced.

SI is a Delaware corporation with its principal place of business in Chattanooga, Tennessee. SI manufactures Fibermesh®, which is also used as secondary reinforcement of concrete building slabs. Fibermesh® is made up of polypropylene strands made from homopolymer virgin polypropylene fibrillated fibers.

Western States has filed a class action suit against SI alleging that SI has engaged in false and misleading comparative advertising and misrepresentation with respect to the nature, quality, and characteristics of Fibermesh® in violation of the Lanham Act, 15 U.S.C. § 1125(a).[4] Among other things,

Defendant's Request for Oral Argument and Granting Defendant's Request for Supplemental Briefing.

3. Welded wire mesh is also known as welded wire fabric, 6 × 6, and 10 × 10 welded wire mesh.

4. 15 U.S.C. § 1125 provides in relevant part:
(a) Civil action
(1) Any person who, on or in connection with any goods or services ... uses in commerce ... any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
...
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Western States alleges that SI's claims that Fibermesh replaces welded wire mesh, eliminates the need for welded wire mesh, prevents cracking, is superior to welded wire mesh, and is more cost effective than welded wire mesh are false and misleading.

## II.

### ANALYSIS

Fed.R.Civ.P. 23 ("Rule 23") defines the requirements for a class action. Rule 23(a) lists four prerequisites to a class action: 1) the class must be so numerous that joinder is impracticable; 2) there are common questions of law or fact; 3) the claims and defenses of the class representative are typical of those of the class; and 4) the class representative will fairly and adequately represent the interests of the class. In addition to meeting the requirements of Rule 23(a), the potential class representative must also show that the action is of one of the types of actions listed in Rule 23(b) that is maintainable as a class action. In this case, Western States contends that its action qualifies under Rule 23(b)(3), which requires that the common questions of law or fact predominate over questions affecting the class members individually and that a class action is the superior method for litigating the class claims. When examining whether a class action is maintainable under Rule 23(b)(3), the court should consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). These factors, however, are not exhaustive. *Kamm v. California City Development Co.*, 509 F.2d 205, 212 (9th Cir.1975). Determining whether class certification is proper is within the discretion of the trial court. *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir.1977). The court is required to take the allegations of the plaintiff's complaint as true. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975). Plaintiff bears the burden of showing that the elements of Rule 23 are met. *Doninger*, 564 F.2d at 1308.

### A. A Class Exists

Implicit in Rule 23 is the requirement that a class exist and that the putative class representative be a member of the class. *Equal Employment Opportunity Comm'n v. General Telephone Co.*, 599 F.2d 322 327 (9th Cir.1979). Western States defines in its Complaint the class as "consisting of all entities and persons who are manufacturers of 6 × 6, 10 × 10 welded wire mesh." The court finds the class is sufficiently defined and that Western States is a class member.

### B. Numerosity and Impracticality of Joinder

Western States has submitted evidence that there are over 100 class members, geographically spread out across the United States and various foreign countries. SI has not contested Western States's showing of numerosity and impracticality of joinder.

### C. Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of common questions of law or fact. "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). Western States meets the commonality requirement because there are questions of law and fact common to all class members, such as whether SI's advertisements are false and misleading and whether any misrepresentations are material.

In addition, whether the proposed class is entitled to injunctive relief is a question common to the class. SI contends that in order to obtain injunctive relief, Western States will have to show that customers were actually deceived by SI's allegedly false ad-

vertising. When a plaintiff shows that the defendant's false advertising was intentional, the plaintiff is entitled to a presumption that customers were deceived. *U–Haul Int'l, Inc. v. Jartran Inc.,* 793 F.2d 1034, 1041 (9th Cir.1986). SI contends that the presumption should not apply in this case because Western States has not alleged that SI acted intentionally. However, Western States makes such an allegation in paragraph 11(k) of the complaint: "Among the questions of law and fact common to the Class are: ... Whether the defendants' acts as alleged constitute knowing, willful, extraordinary, malicious, wanton and/or oppressive conduct." Complaint ¶ 11(k).

SI objects to applying the presumption because it contends that the reasons for the presumption do not apply in this case. SI argues that the Lanham Act was passed to protect consumers and competitors. Congress wanted to encourage commercial firms to act as "vicarious avengers" of consumers' rights. Injunctive relief serves to vindicate consumers rights. In this case, however, SI contends that the rights protected by an injunction would be the rights of other commercial firms, not ordinary consumers. Because other commercial firms are in as good a position as Western States to protect their rights, the presumption of consumer deception should not apply.

The Ninth Circuit justifies the presumption of consumer deception because "[i]t is not easy to establish actual consumer deception through direct evidence. The expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing decisions justifies the existence of a presumption that consumers are, in fact, being deceived. He who has attempted to deceive should not complain when required to bear the burden of rebutting a presumption that he succeeded." *U–Haul,* 793 F.2d at 1041. Contrary to SI's contention, the rationale behind the presumption has nothing to do with the commercial firms avenging consumer rights. The reason for the presumption is to ease the burden of proof because of the difficulty of establishing actual deception. The difficulty of proving actual deception applies equally to cases in

which customers are commercial firms as to cases in which customers are ordinary consumers. Therefore, if Western States can prove its allegation that SI's alleged false advertising was intentional and SI does not prove that customers of their Fibermesh® were not deceived by their advertising and representations regarding their product, the court's determination whether an injunction should issue will be common to the proposed class.

**D. Typicality**

"Under Rule 23's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1019. "The named plaintiff need not have suffered an identical wrong. It is sufficient if his allegations are derived from the same remedial and legal theories." *Murray v. Local 2620, District Council 57, American Federation of State, County and Municipal Employees, AFL–CIO,* 192 F.R.D. 629, 635 (N.D.Cal.2000). Class certification is inappropriate when the potential class representative is "subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992).

SI contends that Western States has not met the typicality requirement because it is subject to defenses unique to it. Western States and manufacturers of welded wire mesh sell to wholesalers, distributors, or retailers or directly to concrete subcontractors. SI sells Fibermesh® to ready mix concrete producers who sell it to concrete subcontractors. SI contends that because SI and Western States employ different channels of distribution, they are not in direct competition and Western States does not have standing to maintain a claim against SI under the Lanham Act. In order to have standing against SI, Western States would have to alter its class definition to include welded wire mesh wholesalers, distributors, and retailers. If Western States enlarges the class, SI reasons that Western States's claims will not be typical because it has a unique de-

fense of non-competitors against Western States.

When a plaintiff's claim under the Lanham Act does not relate to the deceptive and misleading use of trademarks, "it is actionable under section 43(a) only insofar the Lanham Act's other purpose of preventing 'unfair competition' is served." *Waits v. Frito-Lay*, 978 F.2d 1093, 1109 (9th Cir.1992). Thus, to serve the Lanham Act's purpose of preventing unfair competition, a plaintiff bringing a false advertising claim under the Lanham Act must suffer a "discernibly competitive injury." *Id.* at 1109. SI contends that because it does not sell directly to concrete subcontractors while Western States does, SI and Western States are not competitors because they do not compete for sales to concrete sub-contractors. Put simply, SI believes only direct competition for customers between the plaintiff and defendant will satisfy the competitive injury requirement.

The only case SI relies on does not support a direct injury requirement. In *Summit Technology, Inc. v. High-Line Medical Instruments*, 933 F.Supp. 918 (C.D.Cal.1996), the plaintiff, Summit, sued Ellis under Section 43(a) of the Lanham Act. Summit manufactured ophthamological laser systems for the treatment of eye disorders. *Id.* at 924. Some laser systems were manufactured for domestic use while others were manufactured for international use. *Id.* The FDA approved certain laser systems manufactured for domestic use. *Id.* Summit alleged that Ellis, a doctor, made misstatements about laser systems manufactured for international use by claiming that the domestic and international laser systems were the same and that the FDA had approved the laser system manufactured for international use. *Id.* at 937. Although the court ultimately concluded that Summit had sufficiently alleged standing to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court rejected certain of Summit's arguments as inconsistent with the Ninth Circuit's standing requirements. *Id.* at 939 n. 14. Summit argued that it suffered a competitive injury because both it and Ellis promoted the laser system. *Id.* Summit could be injured by Ellis' allegedly false statements if other doc-

tors purchased the Summit machines based on those alleged misrepresentations and were not satisfied with the laser system, which would hurt Summit's reputation. *Id.* The district court rejected Summit's approach. "Under this theory, any two parties with some economic nexus, or whose conduct has some economic effect upon the other, could be construed as 'competitors.'" *Id.*

However, construing Western State and SI as competitors does not result in "deconstructing" the term "competitors" as the district court stated would happen if it adopted Summit's view. Indeed, Western States and SI fit within the definition of competitors used in *Summit:* "[p]ersons endeavoring to do the same thing and each offering to perform the act, furnish the merchandise, or render the service better or cheaper than his rival." *Id.* (quoting *Fuller Bros., Inc. v. Int'l Marketing, Inc.*, 870 F.Supp. 299, 303 (D.Or.1994) (quoting *Black's Law Dictionary*, 5th ed. p. 257)). Both Western States and SI sell different products aimed at controlling the expansion of cracks in concrete. False advertising by SI could result in an injury to Western States that the Ninth Circuit defines as competitive, i.e., "harmful to the plaintiff's ability to compete with the defendant." *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir.1995).

SI also maintains that Western States's claims are not typical because Western States is subject to a statute of limitations defense to which other class members may not be subject. For example, in *Hanon*, 976 F.2d at 508, the Ninth Circuit held that a class representative's claim in a securities fraud case was not typical of the class. The defendant could argue based on the proposed class representative's particular investment practices that the proposed representative should not be entitled to demonstrate reliance on the defendant's alleged misrepresentations based on the integrity of the market theory. *Id.* The defendant would not be able to make a similar argument regarding the absent members of the class. *Id.* Similarly in this case, the statute of limitations defense is not unique to Western States. Other class members may also be subject to a statute of limitations defense given the fact that West-

ern States challenges advertisements dating back to 1983 and, as the court discusses below, shorter statute of limitations could be applicable to other class member's claims than is applicable to Western State's claim.

## E.  Adequacy of Representation

■ The adequacy of representation requirement arises out of due process concerns that absent plaintiffs have adequate representation before being bound by a judgment. *See Hanlon,* 150 F.3d at 1020. Determining whether the class representative will adequately represent the class focuses on two questions: 1) whether the class representative and its counsel have any conflicts of interest with the class members and 2) whether the class representative and its counsel will vigorously prosecute the action on behalf of the class. *Id.*

■ SI maintains that Western States is not an adequate class representative because it seeks only injunctive relief and disgorgement of SI's profits and has abandoned recovery of damages for lost sales or market share. A class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class. *See e.g., Thompson v. American Tobacco Co., Inc.,* 189 F.R.D. 544, 550 (D.Minn.1999) (holding class representatives in class action brought by smokers were inadequate representatives because they waived personal injury damages and sought only a medical monitoring program); *Feinstein v. Firestone Tire & Rubber Co.,* 535 F.Supp. 595, 606–07 (S.D.N.Y.1982) (holding class representatives were inadequate because they sought damages only for breach of warranty claim and not for personal injuries or wrongful death).

■ A further problem with Western States's decision only to seek disgorgement of SI's profits and not damages is that Western States has not put forth a method of apportioning SI's profits or lost sales among the class members. Any claim Western States makes to SI's wrongful profits or any lost sales will necessarily diminish the amount of profits or lost sales another class member can recover. Western States has not shown how this conflict among class members can be avoided. The same analysis applies to Western States' class members and other claims to market share. Western States has not shown how this apparent conflict can be eliminated. Therefore, Western States has not met its burden of showing that it will be an adequate class representative and has not satisfied the requirements of Rule 23(a). *See Am/Comm Sys., Inc. v. American Tel. & Tel. Co.,* 101 F.R.D. 317 (E.D.Pa.1984) (holding that potential class representative in an antitrust action did not satisfy the adequate representation requirement because class members would have to prove that they and not another class member would have had a certain percentage of market share but for the defendant's anticompetitive activity).

## F.  Predominance of Common Questions of Law and Fact And Superiority of a Class Action

■ Additionally, Western States fails to show that class certification is appropriate because the questions of law or fact common to all class members will not predominate over the questions relating only to individual class members. Rule 23(b)'s requirement that common issues of law or fact predominate over individual issues is more stringent than Rule 23(a)'s commonality requirement. *Id.* "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997).

SI maintains that proving injury and causation will not be common to each class member. Each class member will have to prove that it "has been or is likely to be injured as the result of the foregoing [false advertising] either by direct diversion of sales from itself to defendant, or by lessening of the good will which its products enjoy with the buying public." *Cook, Perkiss, & Liehe, Inc. v. Northern California Collection Serv., Inc.,* 911 F.2d 242, 244 (9th Cir.1990). The court agrees with SI. Western States argues in its reply that "common sense supports the proposition that if Synthetic claims that its product is a substitute or alternative to WWM

and if Synthetic sells in the same geographical area as the manufactures of WWM, and if Synthetic made sales of Fibermesh® as a replacement for WWM, the manufacturers of WWM have been injured." Plaintiff's Reply at p. 6, Il. 17–21. Western States's argument glosses over the fact that it will have to prove, as will each class member, that customers bought Fibermesh® in place of welded wire mesh and that SI's alleged false advertising caused customers to substitute Fibermesh® for welded wire mesh. If the class proves that SI's advertisements were false, it will be entitled to a presumption that consumers were deceived. *U–Haul,* 793 F.2d at 1041. However, this presumption does not alleviate a class member's burden of proving that such deception injured it if it wants to recover damages for lost sales and market share. *See Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 210 (9th Cir.1989).[5] Western States has not provided any method of proof that would avoid this individualized inquiry into whether each class member lost sales or market share to SI because SI's advertisements were false or deceptive.

■ The court also agrees with SI's contention that the court will have to engage in a separate inquiry as to the statute of limitations applicable to each class member. The Lanham Act does not contain its own statute of limitations. The relevant statute of limitations for federally created causes of action which do not provide their own accrual times and statutory time period for filing a Complaint is that of the state most connected with the action. *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981). *See also, Unlimited Screw Products, Inc. v. Malm,* 781 F.Supp. 1121, 1125 (E.D.Va.1991) (applying Virginia's two year statute of limitation for fraud to Lanham Act claim); *PepsiCo, Inc. v. Dunlop Tire & Rubber Corp.,* 578 F.Supp. 196, 199 (S.D.N.Y.1984) (applying New York's six year statute of limitations for fraud to Lanham Act claim).

As a threshold matter, Western States contends that consideration of the statute of limitations is improper on a class certification motion because it is an affirmative defense. In *Rishcoff v. Commodity Fluctuations Sys.,* 111 F.R.D. 381, 382 (E.D.Pa.1986), on which Western States relies, the court concluded "that issues relating to whether certain claims may be barred by the statute of limitations are irrelevant to the question of whether a class should be certified and will not be considered in determining the propriety of allowing the case to proceed as a class action." *Rishcoff* is distinguishable. In *Rishcoff,* the defendants argued that class certification should be denied because most of the class members' claims were barred by the statute of limitations. *See id.* But in this case, the court is not being asked to determine that any class members' claims are in fact time barred, but only whether the statute of limitations inquiry will predominate over common issues of law and fact. Thus, the court is not impermissibly considering the merits of the class members' claims on a motion for class certification.

If the court addresses SI's statute of limitations argument, Western States contends the court should apply the four year statute of limitations applicable to California's unfair business practices statute, Cal. Bus. Prof. Code §§ 17200, 17208, to all class members' claims. The practice of borrowing the statute of limitations from state law when federal law is silent derives from the Rules of Decision Act, 28 U.S.C. § 1625. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 355, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321 (1991). The purpose of the Rules of Decision Act is to ensure the "uniformity of decision within each state." *King v. Order of United Commercial Travelers of America,* 333 U.S. 153, 157, 68 S.Ct. 488, 491, 92 L.Ed. 608 (1948). Western States's position would result in the anomaly that a welded wire mesh manufacturer from Tennessee that was a party to a class action filed in California against SI could recover for injuries that occurred more than a year before the filing but if that same Tennessee manufacturer sued SI in Tennessee, that its claim

---

**5.** Proof of injury is not required to obtain an injunction against SI. *See Harper House,* 889 F.2d at 210. However, Western States seeks both injunctive relief and disgorgement of profits.

would be barred by Tennessee's one year statute of limitations.

■ Alternatively, Western States urges that instead of borrowing a statute of limitations from an analogous state source, the court should apply a federal statute of limitations based on the Supreme Court's analysis in *Lampf,* 501 U.S. at 356–356, 111 S.Ct. at 2778–79. The Supreme Court in *Lampf* recognized the general rule that federal courts should borrow a state statute of limitations when the federal statute does not contain its own limitations period, but it noted a "closely circumscribed exception" which allows borrowing statute of limitations from federal law "only when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." 501 U.S. at 356, 111 S.Ct. at 2778. Courts must engage in a three part analysis in deciding whether to borrow a federal statute of limitations. *See id.* at 357, 111 S.Ct. at 2779. First, they must decide whether a uniform statute of limitations is to apply. *See id.* Second, they must determine whether the statute of limitations should come from federal or state law. *See id.* Finally, the court should override the presumption in favor of borrowing a state statute of limitations and apply a federal limitations period only when "an analogous federal source truly affords a 'closer fit' with the cause of action at issue than does any available state-law source." *Id.*

Western States urges the court to apply the *Lampf* analysis, but curiously has not engaged in applying the three pronged analysis to the instant action. The only federal statute Western States identifies is 28 U.S.C. § 1658 ("Section 1658"), which provides that a civil action arising under an Act of Congress enacted after December 1, 1990 is subject to a four year statute of limitations. Western States admits that Section 1658 has no application to actions alleging violations of the Lanham Act. Western States has not identified an analogous federal source that provides a closer fit than a state law statute of limitations with the claim in this action so

the court declines to base its consideration of this motion for class certification on the assumption that there is an analogous federal statute of limitations to apply.

The potential class in this case includes manufacturers of welded wire mesh located in 30 states and 39 foreign countries. Since the Ninth Circuit applies the statute of limitations applicable in the state in which the claim arose, the court will have to determine as to each of the individual class members where its Lanham Act false advertising claim arose. Once the court determines which state's statute of limitations to apply to a class member's claim, the court will have to ascertain the particular statute of limitations for Lanham Act claims in that state. In some cases that will not be clear. For example, the Ninth Circuit has not addressed which of California's various statutes of limitations should apply to Lanham Act claims arising in California, and the parties here dispute the applicable statute of limitations. Such a dispute is likely to arise regarding the applicable statute of limitations of another state or foreign country.

■ Once the court determines the statute of limitations to apply to each class member, it would then have to determine when each class member's claim arose. Although the court borrows a state statute of limitations, the question when a claim accrues remains a matter of federal law. *Johnson v. State of California,* 207 F.3d 650, 654 (9th Cir.2000). The federal rule is that a claim arises when the plaintiff knows or has reason to know of the injury. *Id.* For each class member, the court will have to determine when it had reason to know of the injury.

■ Although the existence of individual questions relating to the statute of limitations will not alone defeat class certification, the plaintiff must otherwise satisfy the predominance requirement. *See Cameron v. E.M. Adams & Co.,* 547 F.2d 473, 478 (9th Cir.1976) ("The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones. Given a sufficient nucleus of common questions, the presence of the individual is-

sue of compliance with the statute of limitations has not prevented certification of class actions in securities cases."). In this case, the individual issues involving whether SI's alleged false advertising injured each class member and the extent of the injury prevents the court from finding that there is a sufficient nucleus of common questions. Given the individualized inquiry into causation, injury, and the applicable statute of limitations, the court cannot conclude that the common issues—whether SI's advertisements are false or misleading, whether SI acted intentionally, whether the class members have standing, and whether the class members are entitled to injunctive relief—predominate over the individual issues. *See O'Connor v. Boeing North American, Inc.*, 197 F.R.D. 404, 413–14 (C.D.Cal.2000) (holding individual issues relating to statute of limitations predominated over common issues of nuisance, trespass, and unfair business practices claims); *Fisher v. Bristol–Myers Squibb Co.*, 181 F.R.D. 365, 371–72 (N.D.Ill. 1998) (denying certification of consumer fraud class action because variances in consumer fraud state law, variances in state statute of limitations, and individual issues relating to whether the defendant's alleged misrepresentations injured class members predominated over common issues).

Because of the individual issues involving causation, injury, extent of injury and the statute of limitation, the court also concludes that Western States has not met its burden of proving that a class action is a superior method of litigation. The individual mini-trials these issues would require render the proposed class action unmanageable.

### III.

### *DISPOSITION*

ACCORDINGLY, IT IS ORDERED THAT: Plaintiff Western States Motion for Class Certification is DENIED.