Thad MARTIN and Susan Wilson, individually and on behalf of all others similarly situated, Plaintiffs,

v.

HOME DEPOT U.S.A., INC., Defendant.

No. A–03–CA–475–SS.

United States District Court,
W.D. Texas,
Austin Division.

Oct. 12, 2004.

Shari A. Wright, Reich & Binstock, Houston, TX, Tod Aronovitz, Barbara Perez, Mary Margaret Schneider, Aronovitz Trial Lawyers, Miami, FL, Gary E. Mason, Charles A. Schneider, The Mason Law Firm, PC, Washington, DC, Gary S. Graifman, Benjamin Benson, Kantrowitz Goldhamer & Graifman, P.C., Chestnut Ridge, NY, for Plaintiffs.

Thomas M. Bullion, III, Chris A. Blackerby, Brown McCarroll, L.L.P., Austin, TX, David A. Rabin, John P. MacNaughton, Robert P. Alpert, Morris, Manning & Martin LLP, Atlanta, GA, for Defendant.

### ORDER

SPARKS, District Judge.

BE IT REMEMBERED on the 30th day of September 2004, the Court called the above-styled cause for hearing on Plaintiffs' Motion for Class Certification [# 58], and the

parties appeared through counsel of record. Before the Court are Plaintiffs' Motion for Class Certification [# 58]; Plaintiffs' "Memorandum in Support of Plaintiffs' Motion for Class Certification" [# 59]; Defendant's "Memorandum in Opposition to Plaintiffs' Motion for Class Certification" [# 64]; Plaintiffs' Reply [# 73]; and Defendant's Surreply [# 78]. Having considered the parties' lengthy submissions, the arguments presented at the hearing, the case file as a whole, and the applicable law, the Court enters the following opinion and order.

## I. Background

This proposed class action was originally filed in Travis County District Court on July 1, 2003, seeking damages for injuries allegedly sustained from wood products sold by Defendant Home Depot U.S.A., Inc. ("Home Depot") containing a product referred to throughout this suit as chromated copper arsenate "CCA." [1] Home Depot removed the case to this Court on July 10, 2003, pursuant to 28 U.S.C. §§ 1332 and 1446(a), based upon diversity jurisdiction. This Court subsequently ruled removal was proper.

The differing formulations of CCA used to treat wood products, [2] contain an EPA-registered preservative primarily consisting of water combined with chromium and arsenic as active ingredients. [3] These chemicals are believed to leach from the treated wood and contaminate nearby surfaces as well as users of the wood products. Defendant disputes these claims and the dangers posed by the wood. Defendant alleges CCA produces minimal risk to safety, especially when compared to the benefits it provides. [4]

Although not disclosed by their briefing to this Court, Plaintiffs' motion is the fourth attempt to certify a class of persons who own wood that is pressure treated with various forms of CCA. The prior three attempts-two of which were by the same plaintiffs' lawyers as in this case-were rejected. *Ardoin v. Stine Lumber Co.,* 220 F.R.D. 459 (W.D.La. 2004); *Jacobs v. Osmose, et al.,* 213 F.R.D. 607 (S.D.Fla.2003) ("*Jacobs I*"); *Jacobs v. Home Depot U.S.A., Inc.,* 219 F.R.D. 549 (S.D.Fla.2003) ("*Jacobs II*") [5]

## II. Plaintiffs' Motion for Class Certification

Plaintiffs seek to certify a state-wide class of "owners of private residential real property in the State of Texas who have on their property a wood deck or playground equipment constructed of CCA wood that was purchased, either directly or indirectly, from Home Depot." [6] Pet. ¶ 5. To be certified as a class, Plaintiffs must meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs bear the burden of proof as to whether they meet the requirements. *Horton v. Goose Creek Ind. Sch.*

1. Plaintiffs assert claims for breach of express and implied warranty, strict liability, and violation of Texas' Deceptive Trade Practices Act.

2. Treated wood is used in various applications such as internal structural framing, landscaping, playground equipment, fencing, utility and telephone poles, rail ties, dog and bird houses, barns, walkways, patios gazebos, picnic tables, porches, and boat docks.

3. CCA is formulated by several companies, none of which are defendants in this case. These formulators sell the CCA preservative to wood treaters, who are the actual manufacturers of the treated wood, and who are not named as defendants in this lawsuit. The wood treaters then sell the finished product to retail outlets, lumber yards, independent contractors, builders, and others-which either use the products or sell them to end-users. Def.'s App. [# 66], Ex. 6 (Jarvis Aff.) ¶ 5. Home Depot is strictly a retailer of CCA treated wood. *Id.*

4. Bonding CCA to the wood provides long-term protection against decay, termites, and other insects, fungi and dry rot.

5. The serial nature of this CCA class litigation was not lost on Magistrate Judge Austin, who wrote in his report and recommendation on the motion to remand: "[i]t may not be a coincidence that Plaintiffs are seeking to avoid federal jurisdiction here, given recent unfavorable rulings in a similar class action suit in a federal district court in Florida." Rep. and Rec. [# 41] at 16, n. 5.

6. Although in Plaintiffs' reply to Defendant's opposition to the motion for class certification, Plaintiffs dramatically after their motion for class certification by conceding the impossibility of certification as to all of their claims except breach of implied warranty of merchantability, the Court will nevertheless address all of the Plaintiffs claims.

*Dist.,* 690 F.2d 470, 486 (5th Cir.1982). Under Rule 23(a), plaintiffs seeking to be certified as representatives of a class must meet four qualifications: (1) the class is so numerous joinder of all members is impracticable; (2) there are common questions of law or fact to the class; (3) the claims or defenses of the representatives are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). District courts must conduct a "rigorous analysis" of these prerequisites before deciding to certify a class. *Stirman v. Exxon Corp.,* 280 F.3d 554, 561–62 (5th Cir.2002) (quoting *Castano v. Am. Tobacco Co.,* 84 F.3d .734, 740 (5th Cir.1996)). Once Plaintiffs meet these prerequisites, they must also demonstrate they fall into one of the categories enumerated in Rule 23(b).[7]

### A. Numerosity

■ Plaintiffs contend it would be impractical to join all of the members of the purported class without certification. Plaintiffs need not show the number of class members with absolute certainty. *See Carpenter v. Davis,* 424 F.2d 257, 260 (5th Cir.1970) ("It is not necessary that the members of the class be so clearly identified that any member can be presently ascertained."). However, the number of potential class members must be so numerous as to make joinder of all of these persons impractical. Plaintiffs allege the putative class consists of many thousands of persons in the State of Texas who pur-

chased CCA treated wood. Defendant does not counter Plaintiffs' assertions with regard to the size of the putative class. Given the number of potential plaintiffs is substantial and the fact Defendant has not suggested the putative class is insufficiently numerous, the Court finds Plaintiffs have met their burden with respect to the numerosity requirement.

### B. Commonality

■ To meet the second requirement, Plaintiffs must show common questions of law or fact among the class members predominate over questions affecting individual members. As the Fifth Circuit has noted. "The threshold of 'commonality' is not high." *Bertulli v. Indep. Ass'n of Cont'l Pilots,* 242 F.3d 290, 296–97 (5th Cir.2001) (quoting *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir.1986)). In fact, "the commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir.1993) (quoting *Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir.1982)).

The potential members in this suit share many elements of their causes of action. All own the allegedly defective products prompting this suit, and all have an interest in resolving the question of whether they are entitled to compensation or remediation. However, "the individualized nature of these claims still prevents the simultaneous resolution of 'all or a significant portion of the

---

7. Rule 23(b) allows a class action to be maintained if:

   (1) the prosecution of separate actions by or against individual members of the class would create a risk of
   (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
   (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests, or
   (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, or
   (3) the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, (D) the difficulties likely to be encountered in the management of a class action.
   FED. R. CIV. P. 23(b).

potential class's complaints." *Ardoin,* 220 F.R.D. at 463. Additionally, as discussed below, the defendant also has individualized defenses against each plaintiff. Accordingly, Plaintiffs cannot meet the light standard for the commonality requirement.

## C. Typicality

█ The typicality requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Lightbourn v. County of El Paso. Tex.,* 118 F.3d 421, 426 (5th Cir.1997). As the *Ardoin* and *Jacobs* courts both held, because the proof of Plaintiffs' claims and defenses thereto will be dominated by individual evidence, Plaintiffs' certification motion does not satisfy Rule 23(a)(3)'s typicality requirement. *Ardoin,* 220 F.R.D. at 467; *Jacobs I,* 213 F.R.D. at 618; *Jacobs II,* 219 F.R.D. at 551.

### 1. Because no two Pieces of Treated Wood are Alike, Plaintiffs' Claims Cannot be Tried With Common Proof

A false assumption in Plaintiffs' class theory is that treated wood is a fungible commodity. Judge Minaldi in *Ardoin* noted "[i]t cannot be said that all of the wood belonging to the purported class members is defective, and it cannot even be readily determined which, if any, pieces of wood are defective." *Ardoin,* 220 F.R.D. at 466. Where, as here, material product variations exist-including varying types of products, varying uses, and varying sources of, and causes of, alleged failures-it is well settled a class cannot be certified. *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1018–19 (7th Cir.2002) (varying types of defective tires barred finding of predominance); *Castano,* 84 F.3d at 742 n. 15 (different levels of nicotine exposure "through different products, for different amounts of time, and over different time periods" impacts "causation, reliance, comparative fault, and other affirmative defenses").

In the words of defense counsel's own expert Dr. Paul A. Cooper, "treated wood is not like other consumer products which are essentially interchangeable with respect to their appearance, use and composition." Def.'s App. [# 66], Ex. 1 (Cooper Decl.) at 11. For example, there is material variance in the manufacture of treated wood used just for decks. *Id.* at 9–12. Product variation and "the diversity of climates to which the wood is exposed create great differences among the various Plaintiffs in this matter." *Jacobs I,* 213 F.R.D. at 614. "Whether CCA constituents are leached or dislodged, and the amount and type of the constituents leached or dislodged, depends upon many factors": the treatment method; the species of source wood; the part of the tree from which the lumber was cut; the season when the lumber was harvested; the size, shape, and condition of the lumber when treated; the type of CCA formulation; the fixation method used; the climate where the wood is in service; the precipitation to which the wood is exposed; the acidity of the precipitation; the type of surface water to which the wood is exposed; the type of structure; the size and location of the lumber on the structure; the use of the structure; the existence and amount of sawdust from installation; the length of time in service; and the presence of surface treatments. Def.'s App. [# 66], Ex. 1 (Cooper Decl.) at 3–11. Treated wood simply is not all the same, and class certification could be denied based on this alone.

### 2. Individual Issues of Defectiveness, Injury, and Causation Prevent Certification of Mass–Site Contamination Cases

The claim that treated wood is unfit for its intended use, because it leaches CCA constituents that contaminate hundreds of thousands or millions of properties throughout Texas, is not susceptible to class certification. Adjudicating whether any piece of wood leaches and whether that caused injury, involves predominantly individual issues.

As Judge Middlebrooks held in *Jacobs I,* there are too many property-specific factors influencing the issues of whether, and to what extent, treated wood leaches, and whether a given property would be contaminated if the wood did leach, to permit certifi-

cation. *Jacobs I*, 213 F.R.D. at 614. Even though all the alleged injuries in *Jacobs* flowed from the "same general body of products, there is no single accident or event that caused all of Plaintiffs' injuries." *Id.* at 615. Rather, adjudicating each claim "would require intense scrutiny of each potential plaintiff's property to a degree that would not be feasible." *Id.* Any resolution of Plaintiffs' claim of a health risk from property contaminated by leaching "will require a great deal of site-specific and user-specific inquiries." *Id.* "[I]dentifying the source and origins of contaminants in soil will mandate a separate inquiry on each parcel of land at issue." *Id.* In *Jacobs II*, Judge Middlebrooks likewise noted "the need for site-specific inquiries" militated against class certification just as in *Jacobs I*. *Jacobs II*, 219 F.R.D. at 551.

Judge Minaldi concurred in *Ardoin*, holding the individualized nature of plaintiffs' claims "prevents the simultaneous resolution of all or a significant portion of the potential class's complaints." *Ardoin*, 220 F.R.D. at 463. *Jacobs* and *Ardoin* are squarely supported by other courts that have denied class certification of multi-site property contamination cases like this. *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323 (S.D.N.Y.2002); *Dahlgren's Nursery, Inc. v. E.I. du Pont de Nemours and Co., Inc.*, 1994 WL 1251231 (S.D.Fla. 1994).

### 3. Determining Liability Will Involve Individual Inquiries Into Each Class Member's Knowledge About Treated Wood

Claims like these, which turn on a plaintiff's individual knowledge about the characteristics and alleged defects of treated wood, are not appropriate for class certification: " 'Knowledge' is highly individualistic and cannot be determined on a classwide basis." *Jacobs I*, 213 F.R.D. at 616. For example, Plaintiffs must prove reliance to prevail on

their Texas Deceptive Trade Practices Act and breach of warranty claims. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 (Tex.2002) (identifying reliance as an element of plaintiffs' breach of warranty and DTPA claims). In addition, Plaintiffs can recover exemplary damages if they prove by clear and convincing evidence the harm results from fraud or malice. *Schein*, 102 S.W.3d at 695 (citing TEX. CIV. PRAC. & REM. CODE § 41.003(a)). Fraud also requires proof of reliance. *Id.* Moreover, Home Depot is entitled to raise reliance on written information regarding treated wood as a defense. TEX. BUS. & COM. CODE § 17.506. This defense will turn on the individual knowledge available at any given time during the class period, and can vary from year to year, from store to store, from manager to manager, and even from employee to employee. The reliance element of Plaintiffs' prima facie case, and of Home Depot's statutory defense, simply presents too many individual issues that are not susceptible to classwide resolution. *Sandwich Chef, Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 211 (5th Cir.2003) ("Fraud actions that require proof of individual reliance cannot be certified as FED. R. CIV. P. 23(b)(3) class actions because individual, rather than common, issues will predominate.").

### 4. The Involvement of Non–Parties Raises Further Individual Issues

The conduct of thousands of non-parties-building contractors and their agents, the manufacturers of the wood itself, and retailers and other sellers not named herein-will be directly relevant to the proof of Plaintiffs' claims, and the defenses thereto. The extensive involvement of such non-parties, both in terms of potential intervening acts of negligence[8] and representations they may have made about treated wood,[9] precludes any finding of typicality or predominance. "[P]otentially hundreds or thousands of interven-

---

8. *Lienhart v. Dryvit Sys. Inc.*, 255 F.3d 138, 148 (4th Cir.2001) (certification denied of non-personal injury mass tort class based on individual issues of non-party negligent installation of product); *MTBE*, 209 F.R.D. at 350 (common issues did not predominate where different non-parties responsible for plaintiffs' harm).

9. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir.1996) (common issues cannot predominate where each plaintiff received different product information, instructions, and assurances from his physician)

ing parties (unconnected to this litigation) could have somehow handled the treated wood on its path from manufacture to ultimate use." *Jacobs I,* 213 F.R.D. at 616. Moreover, "intervening parties may have provided injured parties with their own information and assurances about the safety of treated wood." *Id.* Such conclusions reinforce this Court's finding of atypicality.

### 5. Establishing Product Identification Creates Predominating Individual Issues

Plaintiffs' claims require proof of product identification. Home Depot does not have a system for tracking purchasers of wood, and its volume of sales makes such a system virtually impossible. Def.'s App. [# 66], Ex. 6 (Jarvis Aff.) ¶ 22. In addition, many individuals purchased their properties with the wood structures already on them, or acquired their wood through a non-party builder, adding yet further layers of individual evidence needed to determine whether Home Depot originally sold the wood. *Jacobs I,* 213 F.R.D. at 616–17.

At the hearing on the motion for class certification in *Jacobs I,* one of the lawyers representing the present Plaintiffs candidly admitted most people will not have clear product identification. Def.'s App. [# 65], Ex. 18(Tr.) at 141–42. In both *Jacobs II* and the instant case, the class is defined in terms of the people who purchased wood specifically from Home Depot. Among the factors Judge Middlebrooks listed in denying certification in *Jacobs II* was "perhaps most importantly, potential difficulties in product identification." *Jacobs II,* 219 F.R.D. at 551. The same difficulties would exist here.

### D. Adequate Representation

■ To demonstrate Plaintiffs will fairly and adequately protect the interests of the other class members, they must show: (1) their counsel is qualified to litigate the case; and (2) they will assert and support legal claims forming the basis of the action. *See Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir.2001) (adequacy requirement includes an inquiry into the "zeal and competence of the representative's counsel").

Plaintiffs' counsel is competent to handle this case. Pls.' Mot. to Certify, Ex. P (resumes of the representative firms). However, Defendant notes because "absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times." *Berger,* 257 F.3d at 480.

Defendant alleges Plaintiffs' counsel are conducting this litigation without fully considering the interests of the class. As evidence for this allegation, Defendant points out: "Plaintiffs' claims have been split and re-split solely to obtain class certification. Specifically, Plaintiff's disavow and waive all personal injury claims." Def.'s Opp'n at 39. This concern is valid. In *Ardoin,* Judge Minaldi found the class representatives' failure to satisfy the adequacy requirement of Rule 23(2) precluded class certification. Specifically, she noted:

> ... plaintiffs fail to demonstrate that they will fairly and adequately represent the class members under the present litigation arrangement. For instance, the doctrine of *res judicata* would forever bar the personal injury claims of those who allege that they are injured by treated wood, subjecting them, instead, to the limited damages allowed under the present cause of action. It is this disparity of claims that prevents the plaintiffs from meeting the commonality requirement, and it is the consequences of not recognizing the disparity of these claims that prevents the class members from adequately representing the class.

*Ardoin,* 220 F.R.D. at 466–67. Courts have repeatedly held the failure to seek full recovery by splitting out personal injury and property damage claims creates a significant conflict of interest destroying adequacy of representation. *MTBE,* 209 F.R.D. at 340; *Western States Wholesale, Inc. v. Synthetic Indus., Inc.,* 206 F.R.D. 271, 277 (C.D.Cal. 2002), *see also Thompson v. Am. Tobacco Co., Inc.,* 189 F.R.D. 544, 550 (D.Minn.1999) (holding representatives in class action brought by smokers were inadequate because they waived personal injury damages

and sought only a medical monitoring program); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 606–07 (S.D.N.Y. 1982) (holding class representatives were inadequate because they sought damages only for breach of warranty claim and not for personal injuries or wrongful death). Any property damage and personal injury claims in this case arise from the same transaction-the purchase and/or use of treated wood. Plaintiffs claim only some of the former, however, and have effectively waived the latter. Upon a final judgment, unasserted property and personal injury damages will be forever barred by operation of res judicata-for all class members. Therefore, this Court refuses to certify Plaintiffs Thad Martin and Susan Wilson as class representatives.

Because Plaintiffs do not meet the threshold requirements of Rule 23(a), their motion to certify the class is denied.

### III. Conclusion

The denial of class action status is in keeping with *Ardoin, Jacobs I & II*, and established law in the Fifth Circuit. Ergo,

IT IS ORDERED that Plaintiffs' Motion for Class Certification [# 58] is DENIED.