RENDERED: DECEMBER 11, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0137-ME

KATHY LITTLE; DEBRA WALKER;
GREG WALKER; AND RICHARD
EVANS, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED                                          APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE MITCHELL PERRY, JUDGE
                    ACTION NO. 17-CI-003023


LOUISVILLE GAS AND ELECTRIC
COMPANY                                                       APPELLEE


                              OPINION
                              AFFIRMING

                          ** ** ** ** **

BEFORE: ACREE, KRAMER, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Kathy Little, Debra Walker, Greg Walker, and Richard Evans,

individually and on behalf of all others similarly situated, bring this appeal from a

January 8, 2020, Opinion and Order of the Jefferson Circuit Court denying

certification of a class action against Louisville Gas and Electric Company (LG&E). We affirm.

On June 15, 2017, Little, Evans, and the Walkers filed a class action complaint against LG&E in the Jefferson Circuit Court. In the complaint, it was alleged that LG&E operated a coal-fired power plant, known as the Cane Run Plant, in Jefferson County, Kentucky.[1] The Cane Run Plant was located adjacent to a residential area, where Little, Evans, and the Walkers resided. According to the complaint, the Cane Run Plant emitted coal dust, fly ash, bottom ash, and other coal combustion byproducts upon Little's, Evans', and the Walkers' properties and upon a class of homeowners located within an "Exposure Area." The Exposure Area consisted of 9,807 properties located up to three miles from the Cane Run Plant:

> 125. Plaintiffs bring this action pursuant to CR 23 of the Kentucky Rules of Civil Procedure on behalf of the following Class ("Class"):
>
> > All current owners of residential real property located in Kentucky within the Exposure Area as depicted in Exhibit 1.
>
> . . . .
>
> 127. Plaintiffs are members of the Class they seek to represent. Because there are thousands of persons in the Class, joinder of claims is impracticable. The disposition of the claims asserted through this class action will be more efficient and will benefit the parties and the Court.

---

[1] In June 2015, the power plant at Cane Run converted from coal-fire to natural gas.

128.   The Class should be certified because the claims asserted in this action, trespass and nuisance, are common to all members of the class and individual complaints otherwise may result in inconsistent or varying adjudications.

129.   Plaintiffs' claims are typical of the claims of the Class, because all claims arise from the same operative facts and are based on the same legal theories.

130.   The Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained competent and experienced counsel in matters such as these. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.  Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

131.   There are questions of law or fact common to the Class that predominate over any questions affecting only individual Class members.  Some of these common questions of law or fact common to the Class include, but are not limited to:

a. Whether coal ash or other particulates were deposited on Class members' properties;

b. Whether during the course of operating the Cane Run Site as a coal-fired power plant Defendant LG&E emitted coal ash or other particulates;

c. Whether the coal ash and other particulates that were deposited on Class members' properties emanated from the Cane Run Site;

d. Whether the measures Defendant LG&E implemented at Cane Run to prevent the release of its emissions on surrounding neighborhoods were effective and sufficient;

e. Whether Defendant LG&E breached a duty of reasonable care and/or statutory and regulatory duties in the operation of the Cane Run Site by allowing coal-related particulates to be deposited on Class members' properties;

f. Whether Defendant LG&E committed gross negligence, or acted with willful, wanton, or careless disregard by allowing coal-related particulates to emanate from its property, knowing that the coal-related particulates were likely to reach Class members' properties;

g. Whether Defendant LG&E trespassed on Class members' properties intentionally or negligently;

h. Whether Defendant LG&E created a nuisance with respect to Class members' properties by unreasonably interfering with their use and enjoyment of their respective properties; and

i. The damages to which Class Members are entitled.

132. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The expense and burden of litigation would substantially impair the ability of many Class members to pursue individual cases to protect their rights. Absent class treatment, Plaintiffs and the Class members will continue to suffer harm and damage to their respective properties as a result of Defendant's unlawful and wrongful conduct.

Complaint at 37-39. In particular, it was claimed that between 2008 and 2015, coal dust, coal ash, and other combustion byproducts were deposited upon the named plaintiffs' and class members' homes, vehicles, and yards, thereby causing their properties to be contaminated with toxic materials:

- 4 -

85.     Arsenic and other toxic metals including chromium and lead that are contained in fly ash, bottom ash, and the other coal combustion byproducts generated, handled, stored, transported, and disposed of at the Cane Run Site are known human carcinogens and pose other significant risks to human health.

86.     Fly ash and bottom ash also contain significant amounts of silica, which is a known cause of the lung disease, silicosis, and lung cancer.

87.     The dangers of inhaling coal dust have been known for decades, given the extensive studies of coal dust's effects on coal miners.  Coal dust has been linked to lung disorders, including progressive massive fibrosis, chronic bronchitis, lung function loss, and emphysema.

88.     A study by Duke University, in the aftermath of the coal ash spill at the Tennessee Valley Authority's Kingston plant in December 2008, concluded that one of the prime dangers of the spill was the "wind-blown re-suspension of fly ash into the atmosphere."

89.     As a result of their toxic metal and silica content, among other substances, standard Material Safety Data Sheets indicate that both fly ash and bottom ash are designated as carcinogenic substances that require extensive handling precautions.

90.     Cancer and silicosis are not the only dangers presented by the coal dust and coal combustion particulates released by the Cane Run Site, as both fly ash and bottom ash are eye, skin, and lung irritants.

91.     With respect to the lungs, the dangers posed by fly ash extend beyond mere irritation.  As detailed in the medical

literature, fly ash contains particles that are sufficiently fine to be trapped deep in the lungs, where they can damage the lung lining, cause inflammation, inhibit immune response, and increase the risk of cardiopulmonary disease.

92. With respect to the eyes, contact with fly ash and bottom ash can cause severe mechanical irritation, such that material safety data sheets generally recommend that those exposed to these ashes wear dust-proof safety goggles.

93. Plaintiffs and other residents of the areas surrounding the Cane Run Site, including the Exposure Area, have complained to Defendant LG&E, as well as to county, state, and federal officials, regarding health problems stemming from exposure to coal dust and coal ash particulates released from the Cane Run Site. The health problems complained of include respiratory ailments, severe eye irritation, sensitivity to strong sulfur odors, and elevated cancer rates. Residents have voiced their complaints to, among others, Defendant LG&E, the APCD, the Kentucky Department for Environmental Protection, the EPA, and elected representatives.

Complaint at 30-32 (footnotes omitted). In the complaint, the causes of action alleged against LG&E were temporary nuisance, trespass, gross negligence, and willful or wanton misconduct. It must be pointed out that only property damages were sought:

133. The following categories of monetary damages sought are common to Plaintiffs and Class members:

a. Monetary damages reflecting the cost to remediate Plaintiffs' and Class members' properties of the contamination caused by Defendant's conduct;

b. Monetary damages to compensate Plaintiffs and Class members for the loss of the use and enjoyment of their properties caused by Defendant's conduct; and

c. any other measures of property damages permitted by Kentucky law.

Complaint at 39. And, the main components of property damage were costs of removing the toxic contamination from the homes of the class members.

LG&E filed an answer. Thereafter, Little, Evans, and the Walkers filed a motion to certify the class action, and LG&E filed a response opposing same. The circuit court conducted a hearing, and by Opinion and Order entered January 8, 2020, the circuit court denied the motion to certify the class action. The court concluded that the requirements of Kentucky Rules of Civil Procedure (CR) 23.01(d) and of CR 23.02 were not satisfied and reasoned:

### D. Adequacy

The fourth and final element of class certification, adequacy, requires that "The representative parties will fairly and adequately protect the interests of the class." CR 23.01(d). "The adequacy inquiry under [CR 23.01(d)] serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). In practice, "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* (citing *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Additionally, "The adequacy

-7-

evaluation also takes into consideration the competency and conflicts of class counsel." *Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287, 296 (W.D. Ky. 2008).

In *Burkhead*, the Court questioned the adequacy of plaintiffs' class representatives because they voluntarily disavowed their personal injury claims while pursuing only property damage claims. *Id.* This led to the issue of res judicata and the possibility of precluding absent class members from later asserting such claims. *See id.* (citing *Yeoman v. Commonwealth Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998). The *Burkhead* Court explained that some federal courts have found that splitting claims creates an inability for the class representatives to adequately represent the best interests of absent class members. *Id.* Therefore, the Court rejected plaintiff's adequacy argument by questioning whether "'the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. at 626 n. 20).

As stated in *Burkhead*, numerous other federal courts have also found that named plaintiffs fail to adequately represent class members when claims are split or disavowed completely. *See Martin v. Home Depot US.A., Inc.*, 225 F.R.D. 198, 204 (W.D. Tex. 2004) (rejecting adequacy of representation because "Upon a final judgment, unasserted property and personal injury damages will be forever barred by operation of res judicata-for all class members"); *Ardoin v. Stine Lumber Co.*, 220 F.R.D. 459, 466 (W.D. La. 2004) (holding that named plaintiffs provided inadequate representation after disavowing personal injury claims because "the doctrine of res judicata would forever bar the personal injury claims of those who allege that they are injured . . . subjecting them, instead, to the limited damages allowed under the present cause of action"); *in re MTBE*, 209 F.R.D. 323, 340 (S.D.N.Y. 2002) (holding that

representatives were inadequate when disavowing personal injury claims reasoning that "When viewed against the risk that subsequent courts would preclude absent class members from bringing personal injury claims, the named plaintiffs' relatively weak incentive to prosecute this case leads to the inescapable conclusion that the class representatives are inadequate").

Here, Plaintiffs have similarly disavowed all personal injury claims and opted to seek only property damage claims. Defendants argue that, similar to *Burkhead* and the cases above, this raises issues of res judicata for absent class members and prevents the Named Plaintiffs from adequately representing the interests of the class. *Defendants Response to Plaintiffs Motion to Certify the Class* at 26-28. Plaintiffs have provided no alternative options to satisfy the potential inadequacies of their proposed class. Rather, they simply state that the *Burkhead* court was likely incorrect and that leading federal authorities and federal courts of appeal conclude that claim splitting does not bar subsequent actions by absent class members asserting claims that were not certified. *Plaintiffs' Reply in Support of Motion to Certify the Class* at 32.

The Court agrees with Defendants. At the very least the res judicata issue "raises questions that 'the interests of the class members will be fairly and adequately protected in their absence.'" *Burkhead*, 250 F.R.D. at 297 (quoting *Amchem*, 521 U.S. at 626 n. 20). Plaintiffs may be correct that some federal authority supports their position. However, a seemingly equal amount of authority also conflicts with their position, including *Burkhead*, a federal district court within this very jurisdiction. Here, as in many of the cases cited above, there are questions "as to whether the named plaintiff's stake in this action is substantial enough, relative to class members who suffered personal injuries, to prosecute this action vigorously on behalf of absent

class members." *In re MTBE*, 209 F.R.D. 323, 340 (S.D.N.Y. 2002).

There is no dispute that Plaintiffs are represented by adequate and capable counsel. However, the decision to disavow personal injury claims creates possible res judicata issues that put into question the adequacy of representation. Numerous federal courts have held that adequacy is not met when claims are split, and personal injury claims are disavowed. Therefore, Plaintiffs have failed to prove adequacy of representation required by CR 23.01(d).

## III. Requirements of CR 23.02

In addition to the four requirements in CR 23.01, a potential class must fulfill one of the prerequisites found in CR 23.02. Here, Plaintiffs have requested certification pursuant to CR 23.02(c). Under CR 23.02(c), certification is proper because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." CR 23.02(c). Even if Named Plaintiffs would have adequately represented the class under CR 23.01(d), Plaintiffs have failed to satisfy the requirements of CR 23.02(c).

Under CR 23.02(c), a "class must satisfy a two-part test of predominance and superiority." *Id* at 116. The predominance inquiry test determines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. at 623. The predominance criterion of CR 23.02(c) is far more demanding than the commonality requirement of 23.01(b). *Manning*, 577 S.W.3d at 118; *See also O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003);

*Anchem*,[sic] 521 U.S. at 624. For instance, the inquiry entails "identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *O'Sullivan*, 319 F.3d at 738 (5th Cir. 2003). In sum, "the question is whether common factual and legal questions predominate, that is, whether any individualized questions relate solely to the amount of damages potentially owed to each class member." *Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287, 299 (W.D. Ky. 2008).

In *Burkhead*, the Court ruled that plaintiffs failed to satisfy CR 23.02(c). *Id.* The Court reasoned that "Plaintiffs have alleged that Defendant's operations result in extensive emissions, but what remains missing is any evidence that the *cause* of the entire class's damages could be determined in a single proceeding." *Id.* Therefore, the Court was unconvinced that Defendant's liability to the class would be a common question or that a class action would be a superior method for adjudicating plaintiff's claims. *Id.* at 300.

Similarly, the Court in *Manning* held that plaintiffs failed to meet the requirements of CR 23.02. The Court explained that "While there are undoubtedly common issues of law and fact in this case, there are also numerous questions that must be answered on an individualized basis relating to causation, impact, and damages." *Manning*, 577 S.W.3d at 117. The Court carefully reiterated that "a need for individual damages determinations is not necessarily fatal to class certification." *Id.*

Here, like the Courts in both *Manning* and *Burkhead*, this Court holds that Plaintiffs have failed to satisfy the requirements of CR 23.02. Importantly, there was no singular event causing the pollution, rather the alleged emissions occurred over a period of many years.

> While this fact is not dispositive by itself, there are simply too many questions to be answered on an individualized basis relating to causation, impact, and damages. For instance, in order to prove intentional trespass, Plaintiffs must prove "An intrusion (or encroachment) which is an unreasonable interference with the property owner's possessory use of his/her property." *Smith v. Carbide & Chemicals Corp.*, 226 S.W.3d 52, 57 (Ky. 2007). The evidence provided by Plaintiffs is insufficient to prove that Defendants conduct caused "an unreasonable interference with the property owner's possessory use of his/her property" for all 9,807 residential properties. This rationale applies equally to Plaintiffs' other claims as well. In sum, adjudicating such a large-scale fact-finding mission would be nearly impossible. Although Plaintiffs have satisfied the commonality requirements in CR 23.01(b), this Court concludes that Plaintiffs have failed to satisfy the more stringent requirements of 23.02(c).

Opinion and Order at 8-11. This appeal follows.

Appellants contend that the circuit court erroneously denied their motion to certify the class action against LG&E. Specifically, appellants argue that the circuit court erred by concluding that the adequacy requirement set forth in CR 23.01(d) was not satisfied. Appellants maintain that any potential personal injury claims arising from exposure to toxic materials emitted by Cane Run Plant are purely speculative, hypothetical, and barred by the statute of limitations. Appellants also claim that the claim-splitting defense is inapplicable because "a court presiding over a class action lacks the ability to provide relief for absent class members' uncertified claims." Appellants' Brief at 11.

To maintain a class action in Kentucky, the requirements of both CR 23.01 and CR 23.02 must be satisfied. *Hensley v. Haynes Trucking, LLC*, 549 S.W.3d 430, 442 (Ky. 2018). CR 23.01 provides:

> Subject to the provisions of Rule 23.02, one or more members of a class may sue or be sued as representative parties on behalf of all only if (a) the class is so numerous that joinder of all members is impracticable, (b) there are questions of law or fact common to the class, (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (d) the representative parties will fairly and adequately protect the interests of the class.

And, CR 23.02 provides:

> An action may be maintained as a class action if the prerequisites of Rule 23.01 are satisfied, and in addition:
>
> (a) The prosecution of separate actions by or against individual members of the class would create a risk of
>
> (i) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or,
>
> (ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (b) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class
as a whole; or

(c) the court finds that the questions of law or fact
common to the members of the class predominate over
any questions affecting only individual members, and
that a class action is superior to other available methods
for the fair and efficient adjudication of the controversy.
The matters pertinent to the findings include:  (i) the
interest of members of the class in individually
controlling the prosecution or defense of separate actions;
(ii) the extent and nature of any litigation concerning the
controversy already commenced by or against members
of the class; (iii) the desirability or undesirability of
concentrating the litigation of the claims in the particular
forum; (iv) the difficulties likely to be encountered in the
management of a class action.

The four prerequisites set out in CR 23.01 to maintain a class action are generally referred to as "numerosity, commonality, typicality, and adequacy of representation[.]" *Hensley*, 549 S.W.3d at 442-43.  If all four prerequisites of CR 23.01 are satisfied, CR 23.02 mandates that the proposed class must then satisfy one of its three requirements.

Our standard of review of the circuit court's decision to certify or not to certify a class action is for an abuse of discretion.  *Hensley*, 549 S.W.3d at 444. It has been recognized that "[i]mplicit in this differential standard . . . of the certification inquiry [is] the [circuit] court's inherent power to manage and control pending litigation." *Id.* at 444 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998)).  To that end, "[a]s long as the [circuit] court's reasoning

-14-

stays within the parameters of [CR] 23's requirement for certification of a class, the [circuit court's] decision will not be disturbed" on appeal. *Hensley*, 549 S.W.3d at 444 (quoting *Hines v. Widnall*, 334 F.3d 1253, 1255 (11th Cir. 2003)).

To begin our analysis, we will address the fourth prerequisite of CR 23.01, adequacy of representation. Under the adequacy of representation prerequisite, "the representative parties [must] fairly and adequately protect the interests of the class." CR 23.01(d). To satisfy the adequacy of representation prerequisite, it must be demonstrated that "1) the representative . . . [has] common interests with unnamed members of the class; and 2) it . . . appear[s] that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Nebraska Alliance Realty Co. v. Brewer*, 529 S.W.3d 307, 313 (Ky. App. 2017) (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

The circuit court's thorough analysis determined appellants did not adequately represent the interests of all proposed class members. As a basis therefore, the circuit court pointed to the decision of appellants not to pursue any personal injury claims of class members against LG&E. The circuit court was troubled by the *res judicata* implications, including the potential of precluding absent class members from later pursuing personal injury claims against LG&E.

-15-

Despite appellants' allegations to the contrary, the absent class members' possible personal injury claims are neither speculative nor hypothetical. In the complaint, appellants repeatedly claimed that the fly ash, bottom ash, and other combustion byproducts were toxic, with some constituents thereof being classified as carcinogenic. According to the complaint, arsenic, chromium, and silica were contained within the fly ash, bottom ash, and other byproducts emitted from the Cane Run Plant. Appellants further asserted that arsenic, chromium, and silica can cause lung cancer, silicosis, progressive massive fibrosis, chronic bronchitis, lunch function loss, emphysema, and severe eye irritation. Complaint at 30-32. In fact, the property damages claimed by appellants are based upon the toxicity of the fly ash, bottom ash, and other combustion byproducts emitted by the Cane Run Plant that settled upon each class member's property.

As to the class action, the principals of *res judicata* are applicable, and the doctrine of claim preclusion would bar a party from relitigating any claim that was or could have been raised in the previous action. *Floyd Cty. Bd. of Educ. v. Layne*, 474 S.W.2d 397, 399 (Ky. 1971); *Miller v. Admin. Office of Courts*, 361 S.W.3d 867, 873 (Ky. 2011). As no personal injury claims were raised in the complaint by appellants, the circuit court believed that issues concerning *res judicata* raised grave concerns as to whether the named plaintiffs could fairly and adequately protect interests of the proposed class members. In the end, the circuit

court determined that the named plaintiffs could not adequately represent the interests of the proposed class and that the adequacy requirement of CR 23.01(d) was not satisfied. We agree. Considering the particular facts alleged in the complaint and the interdependency between the class members' property claims and potential personal injury claims, we are simply unable to conclude the circuit court's reasoning strayed from the parameters of the requirement for class certification per CR 23.01(d). *See Hensley*, 549 S.W.3d at 444. As appellants failed to satisfy CR 23.01(d), we are of the opinion the circuit court properly denied class certification.

Given appellants have failed to qualify for class certification under CR 23.01, we view any remaining contentions of error to be moot or without merit.

For the foregoing reasons, the Opinion and Order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEE: |
|---|---|
| Justin A. Sanders<br>Covington, Kentucky | J. Gregory Cornett<br>Travis A. Crump<br>Louisville, Kentucky |
| Tad Thomas<br>Louisville, Kentucky | Sheryl G. Snyder<br>Theresa A. Canady |
| Steve W. Berman<br>Barbara Mahoney<br>Seattle, Washington | Jason P. Renzelmann<br>Louisville, Kentucky |